# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Cricket MicroSD 32GB SD Card Stored with Ramon<br>Armendariz's Property at the Kern County Jail | )<br>)<br>)  Case No. 5:21-sw-00001-JLT<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1341; 18 USC 1343 | Mail Fraud; Wire Fraud |
| 18 USC 1344 | Bank Fraud |
| 18 USC 1028A | Aggravated Identity Theft |

The application is based on these facts:
See Affidavit of Special Agent Callahan attached hereto and incorporated herein by reference

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Applicant's signature*

Nicholas Callahan, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephone_____ *(specify reliable electronic means).*

Date: January 8, 2021

*Judge's signature*

City and state: Bakersfield, CA         Jennifer L. Thurston, United States Magistrate Judge
*Printed name and title*

MCGREGOR W. SCOTT
United States Attorney
MELANIE L. ALSWORTH
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE Cricket MicroSD 32GB SD Card Stored with Ramon Armendariz's Property at the Kern County Jail | CASE NO.  5:21-sw-00001-JLT<br><br>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT<br><br>**UNDER SEAL** |

I, Nicholas Callahan, being first duly sworn, hereby depose and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of the digital and physical search of a Cricket MircoSD 32Gb SD card, (TARGET DEVICE) held by the Kern County Sheriff's Office at the Kern County Jail, in the property of RAMON ARMENDARIZ. The search warrant is meant to locate violations of Title 18 United States Code Section 1341, Mail Fraud; Title 18 United States Code Section 1343, Wire Fraud; Title 18 United States Code Section 1344, Bank Fraud, Title 18 United States Code Section 1028A, Aggravated Identity Theft. This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all of my knowledge of the investigation of this matter.

## II.   INTRODUCTION AND AGENT BACKGROUND

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code Section 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT                1

3. I am a Special Agent with the Federal Bureau of Investigation and have been since June 2014. I am currently assigned to Weapons of Mass Destruction. I was previously assigned to investigate financial crimes and to the Kern County Violent Gang Task Force (Task Force). I participated in investigations including, but not limited to, narcotics violations, gang activity, criminal enterprises, public corruption, and fraud. The investigators were comprised of Special Agents from the FBI and Task Force Officers (TFOs) from local law enforcement departments. I continue to assist with the investigation of financial crimes in Kern County.

4. I have participated in investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, photographs, and other documents. I have assisted in the handling of confidential sources to successfully infiltrate various-sized narcotics enterprises via intelligence gathering, participation in consensual recordings, and the monitored purchase of a controlled substance. I have also participated in debriefings of cooperating defendants. I have executed search warrants for controlled substances and digital evidence. I have conducted physical and electronic surveillance in connection with narcotics, corruption, and fraud investigations. I have also conducted investigations in which I have used Global Positioning System (GPS) information to locate and track persons who are the subjects of criminal investigations.

5. I have further investigated complex financial crimes to include money laundering and wire fraud. I have participated in investigations that have identified and investigated individuals using true names and aliases through examination of financial records, photographs, social media, phone records, public records, and other documents. I have conducted interviews of victims, witnesses, conspirators, and subjects of investigations. I have conducted physical surveillance in connection with fraud investigations to identify residences and patterns of life.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance

and in part unless otherwise indicated.

### III. FACTS ESTABLISHING PROBABLE CAUSE

#### A. Summary of the Investigation

7. On October 15, 2020, arrest warrant 1:20-cr-00183-NONE-SKO was issued for Ramon ARMENDARIZ for violations of Title 18 United States Code Section 1343, Wire Fraud; Title 18 United States Code Section 1344, Bank Fraud, and Title 18 United States Code Section 1028A, Aggravated Identity Theft.

8. Between the months of February and April 2020, Ramon ARMENDARIZ participated in a fraud scheme in which he fraudulently opened a Fidelity Investment services account in the name and personal identifier of Victim 1 via an online application. An authorized user was Ramon ARMENDARIZ. The purpose of the account was to receive funds fraudulently transferred from Victim 1's personal JPMorgan Chase accounts, a Federal Deposit Insurance Corporation institution, in interstate commerce. ARMENDARIZ successfully transferred approximately $450,000 in funds from Victim 1's JPMorgan Chase account to the Fidelity Investment account via online portals. Fidelity Investment subsequently froze the account transactions. An individual using ARMENDARIZ' known phone number called Fidelity Investment multiple times, in interstate commerce, attempting to access the funds.

9. Ramon ARMENDARIZ additionally transferred a small amount of funds from Victim 1's JPMorgan Chase account to a Brinks pre-paid debit account in ARMENDARIZ' name and personal identifiers through a fraudulent electronic transaction, in interstate commerce.

10. These actions and others were violations of Title 18 United States Code Section 1343, Wire Fraud; Title 18 United States Code Section 1344, Bank Fraud, and Title 18 United States Code Section 1028A, Aggravated Identity Theft.

11. I reviewed a Wells Fargo bank account opened on July 08, 2020, in the name and personal identifiers of Ramon ARMENDARIZ. Wells Fargo is a Federal Deposit Insurance Corporation institution.

12. On July 16, 2020, a check from BAKERSFIELD LIVING WORD was electronically deposited to ARMENDARIZ' Wells Fargo bank account. I reviewed an image of the check and

observed the payee was "RAMON ARMENDARIZ." The payee name was written over another, indiscernible payee. The hand-written script "RAMON ARMENDARIZ" appeared different than the other script on the check image. Wells Fargo subsequently reversed this deposit.

13. On July 16, 2020, a check from JULES A ROTHMAN ACCOUNTANCY to "STIFEL – RAMON ARMENDARIZ" was deposited via automated teller machine (ATM) to ARMENDARIZ' Wells Fargo account. I reviewed an image of the check and observed the portion "RAMON ARMENDARIZ" was hand-written whereas the rest of the check was typed. The signature was "Stifel Ramon Armendariz." Wells Fargo subsequently reversed this deposit.

14. I reviewed surveillance still images associated with the JULES A ROTHMAN ACCOUNTANCY deposit. The image showed a single male wearing a face mask utilizing the ATM. I compared the surveillance image with a California driver's license for Ramon ARMENDARIZ. The face mask worn by the individual in the surveillance image made positive identification difficult, but I observed matching features to include the hairline.

15. Based on the check images, I believe the checks were altered from the original payee to include Ramon ARMENDARIZ. I know from past investigations that people attempting to cash stolen checks will add their name to the payee line in an attempt to cash the check. Based on the account being opened in ARMENDARIZ' name and personal identifiers, and a person resembling ARMENDARIZ observed at an ATM depositing an altered check, I believe ARMENDARIZ was responsible for the check altering. The act of altering the check to fraudulently obtain funds from a Federal Deposit Insurance Corporation is a violation of Title 18 United States Code Section 1344, Bank Fraud.

B. **Custody of Media Storage Device**

16. On November 28, 2020, Ramon ARMENDARIZ was arrested by the Bakersfield Police Department on an outstanding misdemeanor warrant for Possession of Controlled Substance Paraphernalia, and an outstanding felony warrant for Take Vehicle Without Owner's Consent. ARMENDARIZ ultimately pled No Contendre to both counts and was sentenced to serve jail time in the Kern County Jail.

17. On January 04, 2021, I inquired with Senior Deputy Kelcy Pilkington about the content of Ramon ARMENDARIZ' property at the Kern County Jail. Per Senior Deputy Pilkington,

ARMENDARIZ had a microSD memory card in his personal property. Further details provided by Senior Deputy Pilkington on January 05, 2021 identified the item as a Cricket branded 32Gb MicroSD memory card.

18. A MicroSD card is a memory device capable of holding electronic information, similar to a DVD, to include profile information, photos, videos, documents, and other information processed by the cellular device depending on the memory setup. The MicroSD card consists of a small, printed circuit board carrying the circuit elements and protective casing. MicroSD cards work with any device designed with a functional MicroSD port, regardless of the MicroSD card manufacturer or brand. MicroSD cards may be used to transfer data between devices.

19. Because this MicroSD card is branded with the Cricket name, I believe the MicroSD card was obtained in connection to the Cricket cellular phone company. I know from this investigation that Ramon ARMENDARIZ has used multiple cellular phones to conduct fraudulent activity, although no activity was previously identified with a Cricket device. I know that Cricket is a cellular provider offering pre-paid cellular phone service on the AT&T network. I know from personal experience that Cricket offers non-attributable phone contracts by not requiring identification and allowing cash payments, which makes the owner and/or user more difficult to identify. Further, I know from my training and experience that individuals using electronic devices to perpetrate frauds often use devices that are either prepaid and do not require personal identification to activate or that they use fictitious information to prevent law enforcement from identifying the true user. I also know from personal experience that many commercially available cellular phones offer a memory expansion port for MicroSD cards.

20. I know from previous investigations that people committing fraud need regular access to records and information to perpetuate their frauds. The records can include names, personal information, account information, addresses, and ledgers. I further know that people will maintain these records electronically because it is easier to transport an electronic device than the equivalent. For example, Amazon.com lists copy of the <u>Tale of Two Cities</u> as 2,580 kilobytes, meaning approximately 12,403 copies of a <u>Tale of Two Cities</u> could fit on a 32Gb MircoSD card.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. I am aware that it is a common practice for individuals involved in financial crimes to utilize mobile telephones and computer systems, including file sharing services, to maintain documents, records of correspondence with co-conspirators and others involved in their schemes to defraud financial institutions to carry out, facilitate, and/or perpetuate their schemes.

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period-of-time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the TARGET DEVICE may still be stored there, for at least the following reasons.

23. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

24. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

25. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information. Similarly, files that have been viewed via the Internet are

sometimes automatically downloaded into a temporary Internet directory or "cache."

26. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because: Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

27. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

28. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

29. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

30. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. I know that when an individual uses an electronic device to launder and trade virtual currency, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

31. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32. Manner of execution. Because this warrant seeks only permission to examine a device that will be in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.       CONCLUSION

33.     Based upon the foregoing, I submit there is probable for a search warrant authorizing the examination of the TARGET DEVICE described in Attachment A to seek the items described in Attachment B.

34.     I declare under penalty of perjury that the facts contained herein are true and correct to the best of my knowledge and belief.

Dated:  January 8, 2021

_____
Nicholas Callahan, Special Agent, FBI

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim.P. 4.1 on this 8th day of January, 2021

_____
The Honorable Jennifer L. Thurston
United States Magistrate Judge

Approved as to Form and Content:

/s/ *Melanie L. Alsworth*
MELANIE L. ALSWORTH
Assistant United States Attorney

# ATTACHMENT A

## Property To Be Searched

Cricket MicroSD 32Gb SD memory card stored with Ramon ARMENDARIZ's property at the Kern County Jail, referred to as the TARGET DEVICE.

# ATTACHMENT B

# PARTICULAR THINGS TO BE SEIZED

1) The TARGET DEVICE described in Attachment A can be searched and all information described that constitutes fruits, evidence, and instrumentalities of violations of Title 18 United States Code Section 1341, Mail Fraud; Title 18 United States Code Section 1343, Wire Fraud; Title 18 United States Code Section 1344, Bank Fraud, Title 18 United States Code Section 1028A:

   a. images or videos of credit cards, debit cards, financial documents or statements, mail, tax documents, identification cards, personal identifying information, method of fraud, instruction of fraud, or devices used to in furtherance of the identified violations;

   b. images or videos of proceeds of the identified violations;

   c. stored communication content, logs, or data, used to facilitate or coordinate the identified violations, or that may used to identify conspirators;

   d. evidence of who used, owned, or controlled the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   e. evidence of software that would allow others to control the TARGET DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   f. evidence of the lack of such malicious software;

   g. evidence indicating how and when the TARGET DEVICE was accessed or used to determine the chronological context of TARGET DEVICE access, use, and events relating to crime under investigation and to the TARGET DEVICE user;

h. evidence indicating the TARGET DEVICE user's state of mind as it relates to the identified violations;

i. evidence of the attachment to the TARGET DEVICE of other storage devices or similar containers, physical or digital, for electronic evidence;

j. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the TARGET DEVICE;

k. evidence of the times the TARGET DEVICE was used;

l. passwords, encryption keys, and other access devices that may be necessary to access the TARGET DEVICE;

m. records of or information about Internet Protocol addresses used by the TARGET DEVICE;

n. records of or information about the TARGET DEVICE's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

o. contextual information necessary to understand the evidence described in this attachment;

p. geo-location information contained within the TARGET DEVICE or contained within files located on the TARGET DEVICE.